## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| White Forest Resources, Inc., *et al.*, | Case No. 25-10195 (TMH) |
| Debtors.[1] | (*Joint Administration Pending*) |

### DEBTORS' MOTION FOR ENTRY
### OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
### DEBTORS TO (A) PAY PREPETITION WAGES, EMPLOYEE
### BENEFITS OBLIGATIONS, AND OTHER COMPENSATION, AND
### (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
### ADMINISTRATIVE OBLIGATIONS AND (II) GRANTING RELATED RELIEF

White Forest Resources, Inc. and its affiliated debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through their undersigned proposed counsel, hereby submit this motion (this "Motion") for entry of interim and final orders granting the relief described below. In support hereof, the Debtors rely on the *Declaration of Brian Ryniker in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed concurrently herewith, and further represent as follows:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: White Forest Resources, Inc. (3764); Xinergy Corp. (3865); Xinergy of West Virginia, Inc. (2401); Shenandoah Energy, LLC (6770); South Fork Coal Company, LLC (3113); Bull Creek Processing Company, LLC (0894); Raven Crest Mining, LLC (0122); Brier Creek Coal Company, LLC (9999) Raven Crest Contracting, LLC (7796); Raven Crest Leasing, LLC (7844); and Raven Crest Minerals, LLC (7746). The Debtors' service address is 1295 Ashford Hill Rd., Ashford, WV 25009.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

*Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), 541, and 1108 of title 11 of the United States Code, as amended (the "Bankruptcy Code").  The relief is also appropriate in accordance with Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

### RELIEF REQUESTED

4.      The Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"):  (a) authorizing, but not directing, the Debtors, in their discretion, to (i) pay Prepetition Compensation Obligations (defined below) and related expenses arising under or related to Compensation and Benefits Programs (defined below) and (ii) continue their Compensation and Benefits Programs in effect as of the commencement of these chapter 11 cases (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time in the ordinary course of business) and pay related administrative obligations; and (b) granting related relief.

2

5.     The Debtors believe that, as of the Petition Date, there are amounts accrued under or related to the Compensation and Benefits Programs (such amounts, the "Prepetition Compensation Obligations") which the Debtors estimate to be approximately $372,292, all of which will become due and payable during the Interim Period (defined below).  The Debtors believe that all of the Compensation and Benefits Programs are vital to the Debtors' businesses. As a result, pursuant to the Interim Order and pending entry of the Final Order, as set forth in the chart below, the Debtors request authority to make payments on account of the Prepetition Compensation Obligations because such payments are necessary to prevent immediate and irreparable harm to the Debtors' businesses.  The Debtors believe that the amounts sought to be paid pursuant to this Motion are not in excess of the statutory caps set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

| Prepetition Compensation Obligation | Approximate Amount Due and Payable on an Interim Basis | Approximate Amount Due and Payable on a Final Basis |
|---|---|---|
| Unpaid Wages | $250,000 | $250,000 |
| Unpaid Contract Worker Compensation | $6,000 | $6,000 |
| Workplace Safety Bonus Program | $0 | $0 |
| Payroll Costs | $8,600 | $8,600 |
| Business Expenses | $5,000 | $5,000 |
| Healthcare Benefits | $19,814 | $19,814 |
| Life & AD&D Insurance Plans, Disability Programs, and Employee Assistance Program | $23,808 | $23,808 |
| Other Benefit Programs | $12,155 | $12,155 |
| 401(k) Match and 401(k) Deductions | $46,915 | $46,915 |
| **Total** | $372,292 | $372,292 |

6.     The Debtors further request entry of an order:  (a) authorizing all applicable banks and other financial institutions (collectively, the "Banks"), when requested by the Debtors in their discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of

3

payment, including fund transfers, on account of the Prepetition Compensation Obligations, whether such checks or other requests were submitted before, on, or after the Petition Date; (b) authorizing the Banks to rely on the representations of the Debtors as to which checks and payments are subject to this Motion; (c) providing that the Banks shall, at the discretion of the Debtors, receive, process, honor, and pay all prepetition and post-petition checks and fund transfers on account of the Prepetition Compensation Obligations that had not been honored and paid as of the Petition Date; (d) prohibiting the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee (defined below) or other party for the Prepetition Compensation Obligations; and (e) authorizing the Debtors to issue new post-petition checks or effect new post-petition fund transfers to replace any checks, drafts, and other forms of payment which may be inadvertently dishonored or rejected.

7.      The Debtors further respectfully request that the Court schedule a final hearing to consider approval of this Motion on a final basis on or before the thirtieth (30th) day following the Petition Date, or as soon thereafter as the Court's schedule permits (such intervening period between entry of the Interim Order and entry of the Final Order, the "Interim Period").

## BACKGROUND

8.      On February 7, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

9.      The Debtors are privately-held producers of premium metallurgical and thermal coal in the Central Appalachian coal basin.  The Debtors operate two mining operations in West Virginia.  The primary customers for the Debtors' premium metallurgical coal—used in a chemical process that yields coke for the manufacture of steel—are steel producers, commodities brokers and industrial customers.  Electric utilities and industrial companies are the principal customers for the Debtors' thermal coal.

10.      Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and incorporated herein by reference.

## A.      THE DEBTORS' WORKFORCE

11.      The Debtors currently employ approximately 125 active employees (the "Employees").[3]  Of the 125 active Employees, approximately 25 are salaried Employees and approximately 100 Employees are paid on an hourly basis.

12.      The Employees perform a variety of critical functions for the Debtors, including, among other things, in connection with mining, engineering, trucking, mechanics, and providing necessary administrative, managerial, and other support services for the Debtors.

13.      To supplement their workforce, the Debtors from time to time utilize the services of certain individuals and vendors who are engaged through various agreements as contractors, subcontractors, consultants, and third-party services providers (collectively, the "Contract Workers").  The Contract Workers fill immediate business needs of the Debtors with a flexible

---

[3]      The Debtors have an additional six (6) Employees that are currently on short-term or long-term disability.

workforce enabling the Debtors to meet their operational needs in a cost-effective manner.  As of the Petition Date, the Debtors utilize the services of one (1) Contract Worker.

14.     The Employees and Contract Workers perform a wide variety of functions that are critical to the preservation of value and the administration of the Debtors' estates.  In many instances, the Employees and Contract Workers include personnel who are intimately familiar with the Debtors' businesses, processes, and systems and who cannot be easily replaced.  Without the continued, uninterrupted services of the Employees and Contract Workers, the Debtors' business operations will be halted immediately and the administration of the estates materially impaired.

15.     The Employees and Contract Workers rely on their compensation and benefits discussed herein to pay their daily living expenses.  Not only will these workers be irreparably harmed if the Debtors are not permitted to continue paying compensation, including the Prepetition Compensation Obligations, and providing health and other benefits during these chapter 11 cases, but any interruption in payment will also likely jeopardize their continued performance and loyalty to the Debtors.  Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

## B.     THE DEBTORS' COMPENSATION AND BENEFITS PROGRAMS

16.     In the ordinary course of business, the Debtors make certain payments, contributions, deductions, and withholdings under or related to Employee Obligations, Contract Worker Compensation, Workplace Safety Bonus Program, Payroll Costs, PTO, reimbursement of Business Expenses, Employee Benefits Programs, Deductions, Withholdings, and Payroll Taxes (each as defined below and, collectively, the "Compensation and Benefits Programs") for current and former Employees and Contract Workers, as applicable.

4931-7570-2801, v. 6

### i.     Employee Obligations – Wages and Salaries

17.     The Debtors incur obligations to their Employees for, among other things, wages, salaries, overtime, and similar compensation (collectively, the "Wages" or "Employee Obligations").  Employees of Raven Crest Mining, LLC and South Fork Coal Company, LLC, comprising 123 of the Debtors' 125 Employees, are paid bi-weekly in arrears, with an aggregate average payroll for such Employees of approximately $490,000 for each pay period, including payroll taxes and net for deductions of employee benefits and retirement contributions.  The Debtors' remaining Employees are paid semi-monthly in arrears, with an aggregate average payroll for such Employees of approximately $33,000 for each pay period, including payroll taxes and net for deductions of employee benefits and retirement contributions

18.     The Debtors' payroll is managed and processed through CBIZ Benefits & Insurance Services, Inc. ("CBIZ").  For Employees paid bi-weekly, payroll is funded to CBIZ on the Wednesday of each payroll week and paid to the applicable Employees through direct deposits or checks on Friday of such week.  For Employees paid semi-monthly, payroll is pre-funded to CBIZ several days before the applicable pay date and paid to the applicable Employees through direct deposits or checks on the 15th and last days of each month, or the preceding workday if the normal payday falls on a holiday or weekend.

19.     The Debtors' next bi-weekly payroll date of February 7, 2025 will cover the pay period from January 19, 2025 through February 1, 2025, and the Debtors' next semi-monthly payroll date of February 15, 2025 will cover the pay period from February 1, 2025 through February 15, 2025.

20.     The Debtors estimate that, as of the Petition Date, approximately $250,000 in Employee Obligations has accrued and is owing to Employees, and any amounts attributable to

uncashed paychecks on account of prior payroll periods, all of which will come due in the 30 days following the Petition Date.

21.     Accordingly, by this Motion, the Debtors request authority, in their discretion, to pay up to the entirety of the unpaid Employee Obligations and to continue paying Employees Obligations in the ordinary course of business during these chapter 11 cases.

### ii.     Contract Worker Compensation

22.     The Debtors make payments to the Contract Workers (the "Contract Worker Compensation") for trucking, security, drilling, production, engineering, and other support work for the Debtors.  The Employees also rely on the support of Contract Workers to complete projects in furtherance of the Debtors' business and to fill short-term positions.  The Debtors believe the authority to continue paying the Contract Worker Compensation is critical to minimizing disruption of the Debtors' operations.

23.     As of the Petition Date, the Debtors estimate that Contract Workers are owed an aggregate of approximately $6,000 on account of accrued services rendered prior to the Petition Date (collectively, the "Unpaid Contract Worker Compensation").  By this Motion, the Debtors request authority, in their discretion, to pay up to $6,000 of the Unpaid Contract Worker Compensation in the ordinary course and consistent with past practice.

### iii.     Workplace Safety Bonus Program

24.     In the ordinary course of business since 2022, the Debtors have utilized a safety and attendance bonus program (the "Workplace Safety Bonus Program") for Employees to encourage safety vigilance and adherence to workplace safety protocols and to positively influence employee behavior.  Under the Workplace Safety Bonus Program, those Employees who are employed with the Debtors on the first and last workday of a calendar quarter and have no lost-time accidents for safety related reasons and no unexcused absences during such calendar quarter

8

are entitled to receive a $1,000 quarterly bonus payable in the following quarter.  In addition, those Employees who are employed with the Debtors on the first and last workday of a calendar year and have no lost-time accidents for safety related reasons and no unexcused absences during such calendar year are entitled to receive a $2,500 bonus payable in the first quarter of the next calendar year.[4]

25.     A total of 123 Employees are eligible to participate in the Workplace Safety Bonus Program,[5] and the bonus amounts thereunder are a meaningful component of such Employees' overall compensation package.  In addition, the implementation of the Workplace Safety Bonus Program has had a positive impact on the Debtors' workplace safety, with annual lost-time accidents decreasing each year since 2021.

26.     The Debtors estimate that, as of the Petition Date, they do not have any past-due amounts owed on account of the Workplace Safety Bonus Program.  The Debtors respectfully request authority, but not direction, to continue to maintain the Workplace Safety Bonus Program in the ordinary course of business during the administration of these chapter 11 cases and to honor payment obligations under the Workplace Safety Bonus Program, regardless of when such obligations arose.  Failure to administer the Workplace Safety Bonus Program would damage Employee morale at a time when the dedication, confidence, and cooperation of the eligible Employees is most critical to the Debtors' operations and the success of these cases.

---

[4]     To the extent earned, the $2,500 payment is in lieu of any $1,000 quarterly bonus that would otherwise be payable with respect to the fourth quarter under the Workplace Safety Bonus Program.

[5]     No executives or officers of the Debtors are eligible to participate in the Workplace Safety Bonus Program.

### iv.        Payroll Costs

27.        The Debtors use CBIZ as their third-party payroll processor to support payroll processing, payroll tax calculations and filings, and other payroll-related services (collectively, the "Payroll Costs").

28.        CBIZ's services are crucial to the smooth functioning of the Debtors' payroll and human resources systems because they ensure that (a) the Employees are paid on time, (b) source deductions are appropriately determined, (c) payroll reporting is accurate, and (d) appropriate amounts are remitted to taxing authorities and other payees.

29.        The Debtors pay CBIZ approximately $3,707 per month as compensation for its services.  The Debtors estimate that, as of the Petition Date, approximately $8,600 is accrued and owing to CBIZ on account of Payroll Costs.  Accordingly, the Debtors request authority to make any and all payments and remittances to CBIZ for Payroll Costs attributable to the prepetition period and related to its services, including the payroll processing and administrative fees, in the ordinary course of business and in their sole discretion.

### v.        Time Off Program

30.        Prior to the Petition Date, the Debtors offered eligible Employees certain other forms of compensation, including, as applicable, paid time off for observed holidays and vacation time (collectively, "PTO").  These forms of compensation are usual, customary, and necessary if the Debtors are to retain qualified employees to operate their businesses.

#### a.        Holiday Time

31.        The Debtors provide PTO, based upon an eight (8) hour shift, for eight (8) holidays per calendar year to eligible Employees.[6]

---

[6]        Employees scheduled to work on a holiday will be paid for hours worked plus holiday pay.

*b.     Vacation Time*

32.     The Debtors offer a specified amount of vacation time ("Vacation Time") to all Employees.  Employees may begin using Vacation Time after six (6) months of employment, and Vacation Time accrues on a monthly basis up to a maximum of 80 hours each calendar year. Employees are not permitted to carry over unused Vacation Time into the next calendar year but, instead, are paid for earned vacation days not utilized at the end of the calendar year.  In addition, earned but unused Vacation Time is paid by the Debtors in an Employee's final pay upon termination of employment.

33.     Although Vacation Time accrues and is used constantly, making it difficult to quantify as of a precise point in time, the Debtors estimate that the current value as of the Petition Date of accrued and unused Vacation Time for Employees is approximately $35,000.

34.     These forms of compensation are, in certain cases, required by applicable law and usual, customary, and necessary if the Debtors are to retain qualified Employees for business operations.  Thus, failure to provide these benefits could contravene applicable law, harm Employee morale, and precipitate the departure of Employees.

35.     By this Motion, the Debtors request authority to continue to honor their PTO obligations in connection with these programs in the ordinary course of business during these chapter 11 cases.  The Debtors anticipate that their Employees will use their PTO in the ordinary course of business without resulting in any material cash flow requirements beyond the Debtors' normal payroll obligations.

**vi.     Business Expenses**

36.     The Debtors do not have a formal expense reimbursement policy, but historically and in the ordinary course of business have reimbursed certain Employees for approved expenses incurred in the scope of their employment on behalf of the Debtors, including, among other things,

4931-7570-2801, v. 6

travel, lodging, meals, cell phone and transportation allowances, and other business expenses (collectively, the "Business Expenses").  Similarly, in the ordinary course of business, the Debtors pay for certain larger Business Expenses directly through a corporate credit card (the "Corporate Card") issued by Caterpillar Financial.  One Employee with Debtor South Fork Coal Company, LLC currently uses the Corporate Card.  Business Expenses charged to the Corporate Card are paid directly by the Debtors following an internal review and approval process.

37.    Certain prepetition Business Expenses may not have been paid as of the Petition Date because, among other reasons, amounts charged to the Corporate Card have not yet become due or Employees have not yet submitted a request for reimbursement.  There is a lag time between the time expenses are incurred and the time expenses are reimbursed and paid.  Thus, it is difficult for the Debtors to determine with precision the actual amount of incurred but not reported Business Expenses as of any particular time.

38.    As of the Petition Date, the Debtors estimate that they owe approximately $5,000 on account of Business Expenses, all of which will come due within the Interim Period.  It is essential to the continued operation of the Debtors' businesses that the Debtors be permitted to continue reimbursing Employees for the Business Expenses, and accordingly, the Debtors request authority to pay or reimburse all remaining prepetition Business Expenses in the ordinary course of business, and to continue the use of policies relating the reimbursement of Business Expenses, including the Corporate Card program.

**vii.    Employee Benefits Programs**

39.    The Debtors offer eligible Employees the ability to participate in a number of insurance and benefits programs, including, without limitation:  (a) Healthcare Benefits, including the Medical Plans, the Vision Plan, the Dental Plan, and COBRA benefits; (b) the Life & AD&D Insurance Plans; (c) the Disability Programs; (d) the Employee Assistance Program; (e) 401(k)

Plan; and (f) the Other Benefits Programs provided to eligible Employees in the ordinary course of business (each as defined below, and collectively, the "Employee Benefits Programs").  The Debtors may have obligations under certain of these Employee Benefits Programs that remain unpaid as of the Petition Date because such obligations have accrued either in whole or in part prior to the Petition Date, but do not become payable in the ordinary course of the Debtors' businesses until after the Petition Date.

40.     Each of the Employee Benefits Programs is an important component of the total compensation offered to the Employees and is essential to the Debtors' efforts to maintain Employee morale and to minimize Employee attrition.  The Debtors believe that the expenses associated with the Employee Benefits Programs are reasonable and necessary in light of the potential Employee attrition, loss of morale, and loss of productivity that would occur if such programs were discontinued.

a.      **Healthcare Benefits**

41.     In the ordinary course of their businesses, the Debtors offer eligible Employees the opportunity to participate in a number of health benefits programs, including medical, prescription, dental, and vision plans, among others (collectively, the "Healthcare Benefits").[7]  Specifically, the Debtors provide the following:

- Medical Plans:  For eligible Employees, the Debtors offer medical insurance through BlueCross BlueShield of Tennessee ("BlueCross"). Employees have the option to choose among different medical plans, coverages, and cost levels (the "Medical Plans").  In the aggregate, as of the Petition Date, approximately 131 Employees have elected to participate in one of the Medical Plans offered by the Debtors.  The Medical Plans are funded through Employee contributions by participating Employees through payroll deductions in varying amounts based on the type of plan

---

[7]     Where required under applicable non-bankruptcy law, including COBRA (defined below), the Debtors provide eligible Employees with the opportunity to continue participating in the applicable Employee Benefits Programs following their termination by the Debtors.  The Debtors intend for the relief requested herein to apply to such former Employees consistent with the Debtors' prepetition practices and the requirements of applicable law.

and scope of coverage chosen by the applicable Employee, with the Debtors contributing approximately $1,789.00 per Employee per month. As of the Petition Date, the Debtors estimate that they owe up to approximately $10,266.94 on account of the Medical Plans, all of which will come due within the Interim Period.

- Dental Plan:  For eligible Employees, the Debtors offer dental insurance benefits through a plan (the "Dental Plan") administered by The Guardian Life Insurance Company of America ("Guardian").  As of the Petition Date, there are approximately 124 participants in the Dental Plan.  The Dental Plan is funded through contributions by participating Employees through payroll deductions, with the Debtors contributing approximately $64.11 per Employee per month.  As of the Petition Date, the Debtors estimate that they owe up to approximately $7,949.92 on account of the Dental Plan, all of which will come due within the Interim Period.

- Vision Plans:  For eligible Employees, the Debtors offer vision insurance benefits through a plan (the "Vision Plan") administered by Guardian.  As of the Petition Date, there are approximately 129 participants in the Vision Plan.  As with the Medical and Dental Plans, the Vision Plan is funded through contributions by participating Employees through payroll deductions, with the Debtors contributing approximately $12.38 per Employee per month.  As of the Petition Date, the Debtors estimate that they owe up to approximately $1,596.60 on account of the Vision Plan, all of which will come due within the Interim Period.

- COBRA:  The Debtors make payments in respect of Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B) ("COBRA") for qualifying Employees and their qualifying dependents who incur a COBRA qualifying event or loss of coverage in connection with a fully-insured benefit plan (the "COBRA Benefits").  CBIZ administers the Debtors' COBRA Benefits.  As of the Petition Date, the Debtors do not believe they owe any amounts (i) on account of the COBRA Benefits or (ii) to CBIZ for administering the COBRA Benefits.

42.    As of the Petition Date, the Debtors estimate that they owe approximately $19,814.00 on account of the Healthcare Benefits, all of which will come due within the Interim Period.  By this Motion, the Debtors request authority, in their discretion, to pay up to $19,814.00 on account of the Healthcare Benefits and to continue to offer the Healthcare Benefits in the ordinary course of business and in their discretion.

14

### b.    Life & AD&D Insurance Plans

43.    The Debtors provide eligible Employees with basic life insurance ("Life Insurance") and accidental death and dismemberment insurance ("AD&D Insurance" and, together with Life Insurance, the "Basic Life & AD&D Insurance Plans") through USAble Life at no cost to Employees.  Eligible hourly Employees receive $50,000 of Life Insurance and AD&D Insurance coverage.  The average monthly premium (in the aggregate) for the Basic Life & AD&D Insurance Plans is approximately $5,250.29.

44.    Eligible Employees also have the option to purchase additional voluntary life insurance and accidental death and dismemberment insurance ("Supplemental Life & AD&D Insurance Plans" and, together with the Basic Life & AD&D Insurance Plans, the "Life & AD&D Insurance Plans") through USAble Life to supplement the Basic Life & AD&D Plans.  Under the Supplemental Life & AD&D Insurance Plans, eligible Employees can purchase (a) up to a maximum of $300,000 of employee coverage, (b) up to a maximum of $150,000 of coverage for a spouse, and (c) up to a maximum of $10,000 of coverage for children.

45.    As of the Petition Date, the Debtors estimate that they owe up to approximately $10,636.47 on account of accrued and unpaid premiums owed under the Life & AD&D Insurance Plans, all of which will come due within the Interim Period.  Accordingly, the Debtors seek authority, in their discretion and through this Motion, to pay up to $10,636.47 on account of accrued and unpaid premiums all owed during the Interim Period under the Life & AD&D Insurance Plans in the ordinary course of business and in the Debtors' discretion.

### c.    Disability Programs

46.    Through disability benefits provided by the Debtors, a portion of an eligible Employee's income is continued in the event the Employee is unable to work due to illness or injury.  The Debtors provide a basic level of disability benefits to eligible Employees at no cost to

the Employee through a short-term disability insurance program (the "Short-Term Disability Program") and a long-term disability insurance (the "Long-Term Disability Program"[8] and, together with the Short-Term Disability Program, the "Disability Programs"). The Debtors' Disability Programs insurance provider is Guardian.

47.    Eligible Employees receive Short-Term Disability Program coverage equal to 60% of such Employee's base weekly earnings, up to a maximum of $1,500 per week for the first twelve (12) weeks of a disability, if the Employee is disabled and unable to work for more than seven (7) days. Eligible Employees that participate in the Long-Term Disability Program receive Long-Term Disability Program coverage equal to 60% of such Employee's base monthly earnings, up to a maximum of $7,500 per month, if the Employee is disabled and unable to work for more than 90 days.

48.    The Short-Term Disability Program costs the Debtors approximately $5,190.91 each month and the Debtors' Long-Term Disability Program costs the Debtors approximately $7,979.88 each month, all of which will come due within the Interim Period. Accordingly, the Debtors seek authority, in their discretion and through this Motion, to pay up to $13,170.79 on account of accrued and unpaid costs all owed during the Interim Period under the Disability Programs in the ordinary course of business and in the Debtors' discretion.

### d.    Employee Assistance Program

49.    The Debtors make outside assistance available to eligible Employees and their dependents at no cost through an employee assistance program with Uprise Health, which enables Employees to obtain expert, confidential advice on a variety of topics, including mental health,

---

[8]    The Debtors pay 100% of the premium cost under the Long-Term Disability Program after six (6) months of employment.

substance abuse, child and elder care, and other personal and workplace issues (the "Employee Assistance Program").

50.    The Debtors do not believe they owe any amounts as of the Petition Date on account of the Employee Assistance Program, but out of an abundance of caution, seek to continue the Employee Assistance Program in the ordinary course of business and pay any obligations in connection therewith in the Debtors' discretion.

e.    **401(k) Plan**

51.    The Debtors offer Employees the opportunity to participate in a 401(k)-retirement savings plan (the "401(k) Plan").  The 401(k) Plan provides for pre-tax salary deductions of compensation up to limits set by the Internal Revenue Code.  The 401(k) Plan is administered by Voya Financial, who also acts as the 401(k) Plan's trustee (the "401(k) Trustee").

52.    Each pay period, the Debtors deduct the eligible Employee's 401(k) contributions from the Employee's paychecks (the "401(k) Deductions") and hold such amounts in trust until they are forwarded to the 401(k) Trustee.  In the aggregate, the Debtors deduct approximately $27,179.90 each month from Employees' paychecks on account of the 401(k) Deductions.  As of the Petition Date, the Debtors estimate that they owe approximately $27,179.90 on account of the 401(k) Deductions, all of which will come due within the Interim Period.

53.    In addition, the Debtors match (a) 100% up to the first three percent (3%) contributed by eligible Employees toward the 401(k) Plan each pay period and (b) 50% for four percent (4%) and five percent (5%) contributed by eligible Employees toward the 401(k) Plan each pay period, for a maximum match of four percent (4%) (the "401(k) Match").  The Debtors estimate that they will owe approximately $19,734.49 as of the Petition Date on account of the 401(k) Match, all of which will come due within the Interim Period.

17

54.     Many Employees' retirement savings consist primarily of the 401(k) Plan.  Thus, the Debtors believe that continuing the 401(k) Plan is essential to maintaining Employee morale and protecting Employee expectations.  In addition, the Debtors believe that the 401(k) Plan Deductions are generally held in trust by the Debtors and are not property of their estates.

55.     As a result of the foregoing and for the reasons stated below, pursuant to the Interim Order and the Final Order, the Debtors seek the authority, but not direction, to: (a) continue the 401(k) Plan in the ordinary course of business on a post-petition basis, (b) satisfy any unremitted amounts related to the 401(k) Deductions collected in the ordinary course of business, estimated to be approximately $27,179.90 as of the Petition Date, and (c) pay eligible Employees approximately $19,734.49 accrued as of the Petition Date on account of the 401(k) Match.

### f.     Other Benefit Programs

56.     The Debtors also provide the below additional benefit programs for eligible Employees (the "Other Benefit Programs").  Each of the Other Benefit Programs listed below is provided and administered by Guardian.

- **Accident Insurance**:  The Debtors provide eligible Employees with the option to purchase accident insurance through Guardian to help offset the costs associated with accidents, including ambulance rides, MRIs, and other specific injuries (the "Accident Insurance").

- **Critical Illness Insurance**:  The Debtors provide eligible Employees with the option to purchase critical illness insurance through Guardian to help offset the high costs associated with a critical illness and pay a flat dollar amount if the eligible Employee is diagnosed with a covered illness (the "Critical Illness Insurance").

- **Hospital Indemnity**:  The Debtors provide eligible Employees with the option to purchase hospital indemnity insurance through Guardian to help offset certain costs associated with a stay in the hospital (the "Hospital Indemnity").

4931-7570-2801, v. 6

57.     As of the Petition Date, the Debtors estimate that they owe an aggregate of up to approximately $12,154.98 on account of the Other Benefit Programs, all of which will come due within the Interim Period.  Accordingly, the Debtors seek authority, in their discretion and through this Motion, to pay up to $12,154.98 on account of the Other Benefit Programs in the ordinary course of business and in the Debtors' discretion.

**viii.        Severance Obligations**

58.     The Debtors have in the past, on an ad hoc basis and in the Debtors' discretion, provided severance, termination, and other benefits to certain terminated Employees (the "Severance Payments"); however, as of the Petition Date, no former Employees are receiving any Severance Payments.  The Debtors are not seeking approval to make any Severance Payments to Employees by this Motion, and if the Debtors opt to provide Severance Payments to any Employees terminated immediately before or after the Petition Date, the Debtors will file a separate motion with the Court seeking to make such Severance Payments.

**ix.        Deductions, Withholdings, and Payroll Taxes**

59.     For each applicable pay period, the Debtors routinely deduct, directly or indirectly, certain amounts from Employee paychecks, including, without limitation, garnishments, child support, and similar deductions, as well as pre- and after-tax deductions payable pursuant to the Compensation and Benefits Programs as discussed herein (such as applicable deductions related to the Healthcare Benefits, Life & AD&D Insurance Plans, Disability Programs, and the Other Benefits Programs) (collectively, the "Deductions"), and forward such amounts to various third-party recipients.  In the aggregate, the Deductions total approximately $171,191.12 per pay period.

60.     In addition to the Deductions, federal and state laws require the Debtors to withhold amounts related to federal, state, and local income taxes and social security and Medicare taxes

19

for remittance to the appropriate federal, state or local taxing authority (collectively, the "Withholdings"). The Debtors must then match the withheld amounts from their own funds for social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively, the "Employer Payroll Taxes" and, together with the Withholdings, the "Payroll Taxes"). In the aggregate, the Payroll Taxes total approximately $171,191.12 per pay period (including both the Employee and employer portions). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities by CBIZ at the time the Employees' payroll payments are disbursed.

61.    Therefore, the Debtors request authority, in their discretion, to continue to forward any prepetition Deductions or Withholdings (and to continue to forward Deductions and Withholdings on a post-petition basis, whether or not related to the prepetition period) to the applicable third-party recipients in the ordinary course of business and consistent with past practice.

## BASIS FOR RELIEF

**I.    THE COURT SHOULD AUTHORIZE CONTINUATION OF THE COMPENSATION AND BENEFITS PROGRAMS AND PAYMENT OF THE PREPETITION COMPENSATION OBLIGATIONS**

**A.    Maintaining the Compensation and Benefits Programs and Paying the Prepetition Compensation Obligations are Warranted Under Section 363(b) of the Bankruptcy Code and are a Sound Exercise of the Debtors' Business Judgment**

62.    A bankruptcy court may authorize a debtor to pay certain obligations pursuant to section 363 of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §§ 363(b)(1). Under section 363(b)

of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies [its] actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.),* 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

63.     The Debtors have determined, in the sound exercise of their business judgment, that continuing each of their Compensation and Benefits Programs and paying the Prepetition Compensation Obligations are critical to the success of these chapter 11 cases and necessary to avoid immediate and irreparable harm to the Debtors' estates. Any delay or disruption in the provision of the Compensation and Benefits Programs or payment of the attendant Prepetition Compensation Obligations would likely destroy the Debtors' relationships with the Employees and Contract Workers and irreparably impair workforce morale at the very time when the dedication, confidence, and cooperation of the Employees and Contract Workers are most critical. Indeed, without the relief requested herein being granted, the Debtors are at the risk of significant Employee and Contract Worker attrition, as the Debtors' Employees and Contract Workers may seek alternative opportunities, which would put a significant strain on the Debtors' ability to continue to operate in the ordinary course. Employee and Contract Worker attrition would also cause the Debtors to incur additional expenses to find appropriate and experienced replacements,

severely disrupting the Debtors' operations at a critical juncture and diminishing the Debtors' ability to carry out their chapter 11 strategy.  Bolstering the morale of the Employees and Contract Workers, and ensuring the uninterrupted availability of their respective services, will assist the Debtors in maintaining a "business as usual" atmosphere to the extent possible, preserve the Debtors' ability to continue to operate their businesses, and allow the Debtors to preserve relationships with their customers.

64.     In addition to Employee and Contract Worker attrition, failure to maintain the Compensation and Benefits Programs and satisfy the Prepetition Compensation Obligations will likely jeopardize Employee and Contract Worker morale and loyalty at a time when support from Employees and Contract Workers is critical to the Debtors' businesses.  The majority of the Debtors' Employees rely exclusively on their compensation and benefits to satisfy their daily living expenses and needs.  These Employees will be exposed to significant financial difficulties and other distractions if the Debtors are not permitted to honor their employee-related obligations. If the Court does not authorize the Debtors to maintain the Compensation and Benefits Programs and honor their Prepetition Compensation Obligations, many Employees and Contract Workers will be deprived of a significant portion of their income and lose access to critical benefits at a time when the Debtors need their Employees and Contract Workers to perform their jobs at peak efficiency.  The loss in morale and distraction of Employees and Contract Workers worrying about paying their bills and other necessary expenses will harm the Debtors' ability to operate.

65.     Accordingly, there can be no doubt that the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefit and related obligations, including any amounts arising under the Compensation and Benefits Programs that accrued prepetition, and will accrue in the Interim Period.

22

B.     **Payment of Certain Prepetition Compensation Obligations Is Required by Law**

66.     Sections 541(b)(7) and 541(d) of the Bankruptcy Code provide grounds for granting the relief requested with respect to Withholdings and Deductions.  These amounts include amounts earmarked by law, including for taxes and support payments, and Employee contributions to Compensation and Benefits Programs.  These amounts are held in trust and not part of the Debtors' estates and are required to be paid.  11 U.S.C. §§ 541(b), (d); 26 U.S.C. § 7501(a); *see also City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes).  Failure to pay could subject the Debtors' directors and officers to personal liability.  *See DuCharmes & Co. v. Michigan (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

67.     Because many of the Withholdings and Deductions are not property of the Debtors' estates, their application or payment for their intended purposes will not adversely affect the Debtors' estates or their creditors.  To prevent potentially irreparable harm to Employee morale and, in certain cases, to comply with the clear and unambiguous requirements of section 541(b)(7) of the Bankruptcy Code, the Debtors desire to apply and remit the Withholdings and Deductions for the purposes for which the Withholdings and Deductions were taken.

C.     **Payment of Prepetition Compensation Obligations is Appropriate Under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code**

68.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Prepetition Compensation Obligations to priority treatment.  As priority claims, the Debtors are required to pay such claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for: (a) wages, salaries or commissions,

23

including sick leave pay earned by an individual; and (b) contributions to an employee benefit plan). Notably, the Debtors are not seeking relief to make any payments above the priority cap of $15,150 pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code on either an interim or final basis. Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees and Contract Workers and should not negatively affect recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Prepetition Compensation Obligations at this time enhances value for the benefit of all interested parties. The relief sought through this Motion is to allow the Debtors to continue in the ordinary course of business and avoid disruption to their operations. Especially now, as the Debtors pursue an orderly chapter 11 process, it is crucial that the Debtors retain their Employees and Contract Workers that are familiar with their operations and have valuable relationships with vendors and customers. Disruptions to the Debtors' operations, including spending time to identify and train new Employees and Contract Workers would be detrimental to the Debtors' operations and the success of these chapter 11 cases.

### D. The Debtors' Requested Relief Related to the 401(k) Plan is Necessary

69.      The Debtors' relief sought herein related to the 401(k) Plan is necessary because as plan sponsor of the 401(k) Plan, the Debtors have a fiduciary duty arising under Title IV of the Employee Retirement Income Security Act of 1974, as amended, to administer the 401(k) Plan in accordance with its terms. Moreover, the Debtors' failure administer the 401(k) Plan in accordance with its terms would be a violation of the qualification standards of Section 401(a) of the Internal Revenue Code. Disqualification of the 401(k) Plan, which covers a large number of Employees of the Debtors, would generally cause the trust under the 401(k) Plan to lose its tax-exempt status under Section 501(a) of the Internal Revenue Code and would result in participants being currently taxed on their balances under the 401(k) Plan.

70.     Moreover, many Employees' retirement savings solely consist of the 401(k) Plan, and many Employees choose to participate in the 401(k) Plan because of the 401(k) Match.  Thus, the Debtors believe that continuing the 401(k) Plan and the 401(k) Match are essential to maintaining Employee morale.  In addition, the Debtors believe that the 401(k) Deductions are held in trust by the Debtors and are not property of their estates.  Accordingly, pursuant to the Interim Order and the Final Order, the Debtors seek the authority, but not direction, to satisfy 401(k) Plan expenses, including the 401(k) Match and 401(k) Deductions.

## II.     THE COURT ALSO MAY GRANT THE MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY

71.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to the continued operation of a debtor's business.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

72.     Under the "doctrine of necessity," bankruptcy courts may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.  *In re Lehigh & New England Rwy. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for*

25

*Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

73.     Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.,* 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a), and 1108.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value).   The doctrine, largely unchanged from the Court's reasoning in *Miltenberger,* is a widely accepted component of bankruptcy jurisprudence.  *See, e.g.*, *Just for Feet, Inc.*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–87 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits).

74.     Paying the Prepetition Compensation Obligations will benefit the Debtors' estates and their stakeholders by allowing the Debtors' business operations to continue without interruption.  The Debtors believe that without the requested relief, it is probable that Employees at all levels of the Debtors' organization and the Contract Workers who currently work for the Debtors will leave for alternative employment.  Such a development would deplete the Debtors' workforce, hindering the Debtors' ability to implement their chapter 11 strategy.  The loss of valuable Employees and Contract Workers, and the resulting need to recruit new personnel to

replenish the Debtors' workforce, would be distracting and counterproductive at this critical time, during which the Debtors are stabilizing operations and restructuring their obligations in chapter 11. Further, if the Debtors lose valuable Employees and Contract Workers, they will incur significant expenses in locating, recruiting and training replacements that would far exceed the costs of the Prepetition Compensation Obligations for a lost Employee or Contract Worker. Indeed, the Debtors believe that if they do not pay the Prepetition Compensation Obligations, the remaining Employees and Contract Workers may become demoralized and unproductive because of the significant financial strain and other hardship many of the Employees and Contract Workers will experience as a result.

75.    In light of the foregoing, the Debtors respectfully submit that the continuation of their Compensation and Benefits Programs and payment of the Prepetition Compensation Obligations is essential to the success of these chapter 11 cases, represents an exercise of the Debtors' sound business judgment, and is in the best interests of the Debtors' estates, their creditors and all stakeholders.

76.    Courts in this district have routinely granted similar relief. *See, e.g.*, *In re Never Slip Holdings, Inc.*, No. 24-10663-LSS (May 7, 2024) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a post-petition basis); *In re FB Debt Financing Guarantor, LLC*, No. 23-10025 (KBO) (Bankr. D. Del. Feb. 3, 2023) (same); *In re OSG Group Holdings, Inc.,* Case No. 22-10718 (JTD) (Bankr. D. Del. Aug. 29, 2022) (same); *In re TPC Group Inc.*, Case No. 22-10493 (CTG) (Bankr. D. Del.

4931-7570-2801, v. 6

June 30, 2022) (same); *In re Alex and Ani, LLC*, Case No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021).[9]

### III.     THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS THE DEBTORS' PAYMENT IN ACCORDANCE WITH THIS MOTION

77.     The Debtors also request that the Court authorize and direct the Debtors' Banks when requested by the Debtors, in their discretion, to receive, process, honor, and pay all checks or electronic fund transfers drawn on the Debtors' bank accounts presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to cover the checks and electronic fund transfers.  The Debtors also request that the Banks be authorized to rely on the Debtors' designation or representation that any particular check or electronic payment request has been approved pursuant to the Interim Order and the Final Order.

78.     Courts in this district have routinely granted similar relief.  *See, e.g., In re Fast Radius, Inc.*, Case No. 22-11051 (JKS) (Bankr. D. Del. Dec. 13, 2022) (authorizing the debtors' banks to receive, process, honor, and pay all checks and electronic payment requests for amounts approved pursuant to the wages motion); *In re Phasebio Pharmas., Inc.*, Case No. 22-10995 (LSS) (Bankr. D. Del. Nov. 15, 2022) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same); *In re OSG Grp. Holdings, Inc.*, No. 22-10718 (JTD)

---

[9]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

(Bankr. D. Del. Aug. 29, 2022) (same); *In re Enjoy Tech., Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. July 1, 2022) (same).[10]

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

79.     The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003; *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  The Debtors believe an orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested would disrupt the Debtors' operations and cause irreparable harm.  The Employees and Contract Workers would suffer significant hardship and some may immediately seek alternative work opportunities if the relief requested herein is delayed, irreparably jeopardizing the viability of the Debtors' ongoing operations.  Further, failure to receive the requested relief at the outset of these chapter 11 cases would disrupt the "business as usual" message that is critical to the Debtors' ability to stabilize their operations and maintain Employee and Contract Worker confidence during this process.  The Debtors submit that, for these reasons, among other reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

---

[10]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

4931-7570-2801, v. 6

80.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

81.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

82.     The Debtors will provide notice of this Motion to:  (a) United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the Internal

4931-7570-2801, v. 6

Revenue Service; (e) the United States Securities and Exchange Commission; (f) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (g) counsel to the DIP Agent and DIP Lenders; (h) counsel to the Prepetition Agent; (i) banks and financial institutions where the Debtors maintain accounts; (j) CBIZ; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

[*Text Continues on the Next Page*]

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: February 7, 2025          **CHIPMAN BROWN CICERO & COLE, LLP**
      Wilmington, Delaware

*/s/ Alan M. Root*
William E. Chipman, Jr. (No.3818)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
chipman@chipmanbrown.com
root@chipmanbrown.com

*Proposed Counsel to the Debtors and Debtors in Possession*

4931-7570-2801, v. 6

**<u>EXHIBIT A</u>**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| White Forest Resources, Inc., *et al.*, | Case No. 25-10195 (TMH) |
| Debtors.[1] | (*Joint Administration Pending*) |
| | **Related Docket No.** |

**INTERIM ORDER (I) AUTHORIZING
DEBTORS TO (A) PAY PREPETITION WAGES,
EMPLOYEE BENEFITS OBLIGATIONS, AND OTHER COMPENSATION,
(B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
ADMINISTRATIVE OBLIGATIONS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of this interim order (the "Order") and a final order:  (i) authorizing, but not directing, the Debtors, in their discretion, to (a) pay Prepetition Compensation Obligations and related expenses arising under or related to Compensation and Benefits Programs and (b) continue their Compensation and Benefits Programs in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time in the ordinary course of business) and pay related administrative obligations; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  White Forest Resources, Inc. (3764); Xinergy Corp. (3865); Xinergy of West Virginia, Inc. (2401); Shenandoah Energy, LLC (6770); South Fork Coal Company, LLC (3113); Bull Creek Processing Company, LLC (0894); Raven Crest Mining, LLC (0122); Brier Creek Coal Company, LLC (9999) Raven Crest Contracting, LLC (7796); Raven Crest Leasing, LLC (7844); and Raven Crest Minerals, LLC (7746). The Debtors' service address is 1295 Ashford Hill Rd., Ashford, WV 25009.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court

having found that venue of these cases and this proceeding is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and no other

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor,

     IT IS HEREBY ORDERED THAT:

1.       The Motion is granted on an interim basis as set forth herein.

2.       The final hearing on the Motion (the "Final Hearing") is set for _____

__, 2025 at __:__ a.m./p.m. (prevailing Eastern Time).  Any objections or responses to the entry

of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on

_____ ___, 2025 (the "Objection Deadline"), and shall be served on the following parties or

their respective counsel on or before the Objection Deadline:  (i) proposed counsel to the Debtors,

Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801

(Attn: William E. Chipman, Jr.; email: chipman@chipmanbrown.com; and Alan M. Root; email:

root@chipmanbrown.com); (ii) counsel to the DIP Term Loan Agent and the DIP Term Loan

Lenders, Faegre Drinker Biddle & Reath LLP, 1177 Avenue of the Americas, 41st Floor, New

York, NY 10036 (Attn: Lara E. Appleby; email: laura.appleby@faegredrinker.com); (iii) counsel

to the DIP Revolving Lender and the Prepetition Revolving Lender, Bowen Law Group, PO Box

173442, Tampa, FL 33672 (Attn: Chad S. Bowen; email: chad@bowenlg.com); and Gellert Seitz

Busenkell & Brown, LLC, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801 (Attn: Michael Busenkell; email: mbusenkell@gsbblaw.com); (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801 (Attn: Joseph Cudia; email: joseph.cudia@usdoj.gov); and (v) counsel for any statutory committee appointed in these chapter 11 cases.  If no objections or responses are filed and served by the Objection Deadline, the Court may enter the Final Order without further notice or hearing.

3.      The Debtors are authorized, but not directed, in their discretion, to make cash payments on account of the Prepetition Compensation Obligations and related expenses arising under or related to the Compensation and Benefits Programs, as set forth in the Motion, up to $372,292 in the aggregate on an interim basis, and CBIZ is authorized to process payment of all such Prepetition Compensation Obligations whether funded by the Debtors prepetition or postpetition; *provided*, that the Debtors shall not make any payments in excess of the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code without further order of this Court, unless applicable state law requires payments upon termination of an Employee that, in combination with the other payments authorized by this order, would exceed the limits of sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

4.      The Debtors are authorized, but not directed, in their discretion, to: (a) continue their Compensation and Benefits Programs in effect as of the Petition Date and pay related administrative expenses; and (b) amend, renew, replace, modify, revise, supplement, or terminate such Compensation and Benefits Programs in the ordinary course of business.

5.      The Debtors are authorized, but not directed, in their discretion, to: (a) continue utilizing third parties in connection with the Compensation and Benefits Programs as

described in the Motion and to pay or caused to be paid such claims as and when such obligations are due; and (b) pay prepetition amounts owing in the ordinary course of business to third parties in connection with the Compensation and Benefits Programs.

6.      The Debtors are authorized to forward any unpaid amounts on account of Deductions and Withholdings to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition practices and policies.

7.      For the avoidance of doubt, the Debtors reserve all rights to modify, alter, limit, or terminate the Compensation and Benefits Programs in their business judgment and in the ordinary course of business, without further order from the Court; *provided*, that the Debtors shall seek approval from the Court, upon a motion on notice, of any modification of the Compensation and Benefits Programs that would implicate any portion of section 503(c) of the Bankruptcy Code.

8.      Nothing herein shall be deemed to authorize the payment of any amounts that are subject to section 503(c) of the Bankruptcy Code.

9.      The Banks are (a) authorized and directed to receive, process, honor and pay any and all prepetition and postpetition checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Prepetition Compensation Obligations, whether presented before, on, or after the Petition Date; *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Prepetition Compensation Obligations. The Banks shall rely on the direction and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for in this Order.

10.     Notwithstanding anything to the contrary contained in the Motion or in this Interim Order, the Debtors shall provide reasonable advance notice to Faegre Drinker Biddle & Reath LLP, counsel to the DIP Lender, of any material changes or modifications to the Debtors' historical policies and practices with respect to any action taken or proposed to be taken hereunder; and the Debtors, in consultation with the DIP Lender, shall seek Court approval, on notice, of any such material changes or modification to the extend required under the Bankruptcy Code.

11.     Nothing in this Order nor any actions taken hereunder:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.  Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12.     The requirements of Bankruptcy Rule 6003 are satisfied.

13.     Notwithstanding Bankruptcy Rule 6004(h) or any other procedural rule, this Order shall be effective and enforceable immediately upon entry hereof.

14.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**<u>EXHIBIT B</u>**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| White Forest Resources, Inc., *et al.*, | Case No. 25-10195 (TMH) |
| Debtors.[1] | (*Joint Administration Pending*) |
|  | **Related Docket No.** |

**FINAL ORDER (I) AUTHORIZING**
**DEBTORS TO (A) PAY PREPETITION WAGES,**
**EMPLOYEE BENEFITS OBLIGATIONS, AND OTHER COMPENSATION,**
**(B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED**
**ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order and this final

order (the "Order"): (i) authorizing, but not directing, the Debtors, in their discretion, to (a) pay

Prepetition Compensation Obligations and related expenses arising under or related to

Compensation and Benefits Programs and (b) continue their Compensation and Benefits Programs

in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised,

supplemented, or terminated from time to time in the ordinary course of business) and pay related

administrative obligations; and (ii) granting related relief, all as more fully set forth in the Motion;

and upon consideration of the First Day Declaration; and this Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the District of Delaware dated February 29, 2012; and this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: White Forest Resources, Inc. (3764); Xinergy Corp. (3865); Xinergy of West Virginia, Inc. (2401); Shenandoah Energy, LLC (6770); South Fork Coal Company, LLC (3113); Bull Creek Processing Company, LLC (0894); Raven Crest Mining, LLC (0122); Brier Creek Coal Company, LLC (9999) Raven Crest Contracting, LLC (7796); Raven Crest Leasing, LLC (7844); and Raven Crest Minerals, LLC (7746). The Debtors' service address is 1295 Ashford Hill Rd., Ashford, WV 25009.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of these cases and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to make cash payments on account of the Prepetition Compensation Obligations and related expenses arising under or related to the Compensation and Benefits Programs up to $372,292 in the aggregate on a final basis, and CBIZ is authorized to process payment of all such Prepetition Compensation Obligations whether funded by the Debtors prepetition or postpetition; *provided*, that the Debtors shall not make any payments in excess of the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code without further order of this Court, unless applicable state law requires payments upon termination of an Employee that, in combination with the other payments authorized by this order, would exceed the limits of sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

3.      The Debtors are authorized, but not directed, in their discretion, to: (a) continue their Compensation and Benefits Programs in effect as of the Petition Date and pay related

2

administrative expenses; and (b) amend, renew, replace, modify, revise, supplement, or terminate such Compensation and Benefits Programs in the ordinary course of business.

4.      The Debtors are authorized, but not directed, in their discretion, to: (a) continue utilizing third parties in connection with the Compensation and Benefits Programs as described in the Motion and to pay or caused to be paid such claims as and when such obligations are due; and (b) pay prepetition amounts owing in the ordinary course of business to third parties in connection with the Compensation and Benefits Programs.

5.      The Debtors are authorized to forward any unpaid amounts on account of Deductions and Withholdings to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition practices and policies.

6.      For the avoidance of doubt, the Debtors reserve all rights to modify, alter, limit, or terminate the Compensation and Benefits Programs in their business judgment and in the ordinary course of business, without further order from the Court; *provided*, that the Debtors shall seek approval from the Court, upon a motion on notice, of any modification of the Compensation and Benefits Programs that would implicate any portion of section 503(c) of the Bankruptcy Code.

7.      Nothing herein shall be deemed to authorize the payment of any amounts that are subject to section 503(c) of the Bankruptcy Code.

8.      The Banks are (a) authorized and directed to receive, process, honor and pay any and all prepetition and postpetition checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Prepetition Compensation Obligations, whether presented before, on, or after the Petition Date; *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Prepetition Compensation Obligations. The Banks

3

shall rely on the direction and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for in this Order.

9.      Notwithstanding anything to the contrary contained in the Motion or in this Final Order, the Debtors shall provide reasonable advance notice to Faegre Drinker Biddle & Reath LLP, counsel to the DIP Lenders, of any material changes or modifications to the Debtors' historical policies and practices with respect to any action taken or proposed to be taken hereunder; and the Debtors, in consultation with the DIP Lender, shall seek Court approval, on notice, of any such material changes or modification to the extend required under the Bankruptcy Code.

10.     Nothing in this Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.  Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

11.     The requirements of Bankruptcy Rule 6003 are satisfied.

4

12.     Notwithstanding Bankruptcy Rule 6004(h) or any other procedural rule, this Order shall be effective and enforceable immediately upon entry hereof and notice of the Motion as provided therein shall be deemed good and sufficient pursuant to the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

13.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

4931-7570-2801, v. 6