## I IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| White Forest Resources, Inc., *et al.*, | Case No. 25-10195 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: TBD**<br>**Objection Deadline:  TBD** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONVERTING THESE CHAPTER 11 CASES TO CASES UNDER CHAPTER 7, (II) ESTABLISHING A DEADLINE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS, AND (III) GRANTING RELATED RELIEF

White Forest Resources, Inc. and its affiliated debtors (collectively, the "**Debtors**"), by and through their counsel, Chipman Brown Cicero & Cole, LLP, hereby submit this motion (the "**Motion**")[2], pursuant to section 1112(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 1017(f) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) converting the Debtors' Chapter 11 Cases (defined below) to cases under chapter 7 of the Bankruptcy Code, effective as of the entry of the Proposed Order (the "**Conversion Date**"), (ii) establishing a

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  White Forest Resources, Inc. (3764); Xinergy Corp. (3865); Xinergy of West Virginia, Inc. (2401); Shenandoah Energy, LLC (6770); South Fork Coal Company, LLC (3113); Bull Creek Processing Company, LLC (0894); Raven Crest Mining, LLC  (0122); Brier Creek Coal Company, LLC (9999) Raven Crest Contracting, LLC (7796); Raven Crest Leasing, LLC (7844); and Raven Crest Minerals, LLC (7746). The Debtors' service address is 1295 Ashford Hill Rd., Ashford, WV 25009.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the Final DIP Order (each as defined below), as applicable.

deadline for filing final chapter 11 fee applications and setting a hearing thereon, and (iii) granting

related relief.  In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STAEMENT

1.      As set forth in the First Day Declaration, the Debtors filed these bankruptcy cases

with the intent of selling the Debtors' Raven Crest Mine and thereafter consummating a value

maximizing transaction for the Debtors' South Fork Mine.  The Debtors successfully closed on

the sale of the Raven Crest Mine.  Thereafter, the Debtors continued to explore the potential for a

value maximizing transaction related to the South Fork Mine and the balance of the Debtors'

operations.  To that end, the Debtors engaged in discussions with various constituencies, including

the DIP Lenders and the Committee regarding potential transaction structures, including a balance

sheet restructuring and a section 363 sale process.

2.      Unfortunately, due to, among other things, unforeseen production delays and other

operational issues at the South Fork Mine, the Debtors have faced significant liquidity issues post-

petition which made operations difficult, and necessitated Court approved amendments to the

Debtors' DIP Financing to increase borrowings and extend the maturity dates.[3]  Ultimately, the

Debtors determined confirmation of a plan of reorganization was not feasible under the

circumstances and, instead that it was in the best interest of the estates to conduct an expedited 363

sale process for the South Fork Mine assets in an effort to, among other things, try and keep the

mine operating as a going concern, and retain jobs for the Debtors remaining employees.

3.      When first engaged in March, the Debtors' investment bankers began the process

of conducting a market test for the South Fork Mine in connection with a potential plan of

reorganization. Thereafter, the investment bankers actively began running a sale and marketing

---

[3] Currently, based on the most recent amendment approved by the Court, the DIP Facilities are set to mature on August 21, 2025.

4914-5567-7505, v. 1

process for the South Fork Mine assets on May 21, 2025, while the Debtors explored their options for a path forward in these cases. On June 27, 2025, the Debtors filed a motion to approve a sale of the South Fork Mine assets to WFR Acquisition, LLC ("**WFR**")[4] or such other bidder who submitted the highest and best bid for the South Fork mine assets [Dkt. No. 366] (the "**South Fork Sale Motion**"). The Sale Motion attached a draft asset purchase agreement which remained subject to further negotiation and finalization, but otherwise constituted the material terms WFR bid (the "**WFR Bid**"). Other than the WFR Bid, the Debtors did not receive any competing bids by the bid deadline established by the South Fork Sale Motion. In an effort to maximize value, the Debtors further extended the bid deadline, but did not receive any other competing bids, by the extended bid deadline.

4.    Accordingly, thereafter, the Debtors attempted to finalize the WFR Bid. If finalized, the WFR Bid contemplated that, among other things, WFR would assume and/or reimburse certain of the Debtors' pre-closing operational liabilities and that certain cash would be left with the Debtors, such that the Debtors would be administratively solvent and able to facilitate a wind-down of these cases.

5.    Despite significant and continuing efforts, the parties have not been able to finalize the WFR Bid. Nor have the Debtors, despite continuing efforts, been able to procure any competing bids for the South Fork Mine assets. Given liquidity constraints, the Debtors recently furloughed the majority of their remaining employees and idled the South Fork mine. While still trying to finalize a bid for the South Fork Mine assets, the Debtors have been focused on selling coal produced at the South Fork Mine prior to the idle and collecting the corresponding receivables.

---

[4] WFR is an affiliate of Spectrum Origination LLC and Spectrum Credit Opportunities Fund II, LP ("**Spectrum**"), which are, respectively, the administrative and collateral agent, and a lender, under the DIP Term Loan Credit Agreement and the 2020 Prepetition Credit Agreement. Other Spectrum affiliates, in turn, collectively own a majority of the equity in the Debtor White Forest Resources, Inc.

6.      Given liquidity constraints, continuing uncertainty regarding a sale of the South Fork Mine, and the upcoming maturity of the DIP Facilities on August 21, 2025, the Debtors believe that, absent an alternative solution in the very short term, the only option is to convert the Debtors' cases to chapter 7 at this time.[5]

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

8.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.      Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

10.      The statutory bases for the relief requested in this Motion are sections 1112(a) of the Bankruptcy Code, Bankruptcy Rule 1017(f), and Local Rule 2002-1.

## BACKGROUND

11.      On February 7, 2025 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

---

[5] The Debtors will continue to explore any potential alternative resolutions and transactions that could avoid conversion prior to the hearing date on the Motion.

12.     The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.     On February 26, 2025, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors [Docket No. 84] (the "**Committee**").   No trustee or examiner has been appointed in these Chapter 11 Cases.

14.     The Debtors are privately-held producers of premium metallurgical and thermal coal in the Central Appalachian coal basin.  As of the Petition Date, the Debtors operated two mining operations in West Virginia: (i) the South Fork mining operations (the "**South Fork Mine**"), located in Greenbrier County, West Virginia and (ii) the Raven Crest mining operations (the "**Raven Crest Mine**"), located in Boone and Kanawha Counties of West Virginia.

15.     Additional factual background regarding the Debtors' business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the *Declaration of Brian Ryniker in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] (the "**First Day Declaration**"), which is incorporated herein by reference.

16.     On February 7, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, And 364 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Debtors to (A) Use Cash Collateral, (B) Obtain Senior Secured Superpriority Postpetition Financing and Grant Liens and Superpriority Administrative Claims, and (C) Provide Adequate Protection, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* [Docket No. 17] (the "**DIP Motion**").  On March 12, 2025, this Court entered an order granting the final relief [Docket No. 148] (the "**Final DIP Order**") requested in the DIP Motion.

17.     On April 11, 2025, the Court entered an Order [Docket. No. 227] authorizing the sale of the Debtors' assets related to its Raven Crest Mine.  The Debtors closed on a sale of the Raven Crest Mine assets on April 18, 2025.  Thereafter, the Debtors continued to explore the potential for a value maximizing transaction related to the South Fork Mine and the balance of the Debtors' operations.  To that end, the Debtors engaged in discussions with various constituencies, including the DIP Lenders and the Committee regarding potential transaction structures, including a balance sheet restructuring and a section 363 sale process.

18.     Unfortunately, due to, among other things, unforeseen production delays and other operational issues at the South Fork Mine, the Debtors have faced significant liquidity issues post-petition which made operations difficult and necessitated additional and extended DIP Financing. To that end, the Court previously entered two Orders approving amendments to the Final DIP Order and the DIP Credit Agreements [Dkt. Nos. 364 & 415].   As a result of the approved amendments, the Debtors DIP Financing facilities currently are set to mature on August 21, 2025.

19.     Ultimately, the Debtors determined that confirmation of a plan of reorganization was not feasible under the circumstances.  The Debtors instead determined that, under the circumstances, it was in the best interest of the estates to conduct an expedited 363 sale process for the South Fork Mine assets in an effort to, among other things, try and keep the mine operating as a going concern, and retain jobs for the Debtors remaining employees. The Debtors' investment bankers began actively running a sale and marketing process for the South Fork Mine assets on May 21, 2025, while the Debtors' explored their options for a path forward in these cases.[6]

---

[6] When first engaged in March, the Debtors' investment bankers began the process of conducting a market test for the South Fork Mine in connection with a potential plan of reorganization.  In May, while still exploring options, the investment bankers began actively marketing the South Fork Mine assets for a 363 sale.

20.     While the marketing process was ongoing, and after reaching tentative terms with WFR on a WFR Bid, on June 27, 2025, the Debtors filed the South Fork Sale Motion.  A draft asset purchase agreement with WFR (the "**Draft WFR APA**") was attached to the Sale Motion. The draft WFR APA was not final and remained subject to continuing negotiation between the parties, but constituted the material terms of the WFR Bid.

21.     The South Fork Sale Motion set July 11, 2025, as the deadline to submit competing bids for the South Fork Mine assets (the "**Bid Deadline**").  The Debtors did not receive any competing bids by the Bid Deadline.  In an exercise of their business judgment, and in effort to maximize value, the Debtors extended the Bid Deadline to July 18, 2025 [Dkt. No. 383]. Unfortunately, the Debtors did not receive any competing bids by the extended Bid Deadline.

22.     Accordingly, thereafter, the Debtors pursued efforts to finalize the WFR Bid and the Draft WFR APA with WFR.  The Debtors determined to pursue the WFR Bid because, if finalized, among other things, it created a potential path forward towards: (i) administrative solvency, (ii) continued operations of the South Fork Mine, (iii) retention of jobs for the Debtors employees, and (iv) wind-down of these cases in chapter 11.  Among other benefits, the WFR Bid contemplated that, if finalized, WFR would assume and/or reimburse certain of the Debtors' pre-closing operational liabilities and that certain cash would be left with the Debtors, such that the Debtors would be administratively solvent and able to facilitate a wind-down of these cases.  The WFR Bid also contemplated the assumption of material reclamation liabilities and obligations associated with the South Fork Mine.  The Debtors, in their business judgment, believed that this was the best potential option available at the time.  The Debtors understand that the Committee supported pursuit and finalization of the WFR Bid, based upon a tentative settlement reached between the Committee, WFR and Spectrum, which would be effective if the sale closed.

23.     The Debtors and WFR have made substantial and continuing efforts to try and finalize the WFR Draft APA and the WFR Bid.  Despite these efforts, to date, the Debtors and WFR have not been able to finalize the WFR Bid.  Given the uncertainty around finalizing the WFR Bid, the Debtors continued to try and solicit a competing bid for the South Fork Mine assets. However, to date, the Debtors have not been able secure any competing bids.

24.     Given liquidity constraints, the continuing uncertainty around a sale of the South Fork Mine, and the impending DIP Financing maturities, the Debtors recently furloughed the majority of their remaining employees and idled the South Fork mine.  While still trying to finalize a going concern bid for the South Fork Mine assets, the Debtors have been focused on selling coal produced at the South Fork Mine prior to the idle and collecting the corresponding receivables.

## RELIEF REQUESTED

25.     By this Motion, the Debtors request entry of the Proposed Order, pursuant to section 1112(a) of the Bankruptcy Code and Bankruptcy Rule 1017(f), (i) converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code effective as of the Conversion Date, (ii) establishing a deadline for filing final chapter 11 professional fee applications and setting a date for a hearing thereon, and (iii) granting related relief.

## BASIS FOR RELIEF

### A.     CONVERSION OF DEBTORS' CHAPTER 11 CASES TO CHAPTER 7 OF THE BANKRUPTCY CODE

26.     Section 1112(a) of the Bankruptcy Code entitles a debtor to convert its case from chapter 11 to chapter 7 unless (i) the debtor is not a debtor in possession, (ii) the case was originally commenced as an involuntary case under chapter 11, or (iii) the case was converted to a chapter 11 case at the request of a non-debtor party. *See* 11 U.S.C. § 1112(a).  Indeed, section 1112(a) of the Bankruptcy Code "gives the debtor an absolute right to convert" a voluntarily commenced

- 8 -

chapter 11 case to a liquidation case under chapter 7. *In Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R 969, 971 (Bankr. E.D. Pa. 1987); *see also* FED. R. BANKR. P. 1017(f)(1), (2) (conversion under section 1112(a) is requested by motion under Bankruptcy Rule 9013, but is not to be treated as a contested matter under Bankruptcy Rule 9014).

27.     The Debtors respectfully submit that the requirements for conversion set forth in section 1112(a) are satisfied here.  In particular, it is undisputed that the Debtors are debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code, these Chapter 11 Cases were commenced voluntarily and there have been no prior conversions.  Further, as required under section 1112(f) of the Bankruptcy Code, the Debtors are eligible for chapter 7 bankruptcy and could have initiated their cases under that chapter.  Accordingly, section 1112(a) of the Bankruptcy Code provides an independent basis and absolute right for the Debtors to convert their Chapter 11 Cases.

28.     While the Court's inquiry can stop there, there is an alternative basis for conversion. Section 1112(b) of the Bankruptcy Code mandates the same relief on request of a party-in-interest if there is "cause." 11 U.S.C. § 1112(b)(1).  Section 1112(b)(4) contains a non-exclusive list of what constitutes "cause", including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *Id*. § 1112(b)(4)(A).  Notably, a bankruptcy court may consider other factors and employ its equitable powers to reach the result appropriate in the particular case. *In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794, 798 (E.D. Pa. 2000).

29.     Given liquidity constraints, the inability to date to finalize a sale for the South Fork Mine, and the impending maturity of the DIP Financing facilities, the Debtors are administratively insolvent and, absent an alternative resolution in the very short term, there is an absence of a

4914-5567-7505, v. 1

reasonable likelihood of rehabilitation.  Accordingly, the Debtors have determined that conversion of these Chapter 11 Cases to cases under chapter 7 is in the best interests of the Debtors' estates and all stakeholders.

30.      Under the unfortunate circumstances of these Chapter 11 Cases, the Debtors respectfully submit that the interests of all stakeholders would best be served by converting these cases to cases under chapter 7 of the Bankruptcy Code unless an alternative solution can be reached prior to the hearing date on this Motion.[7]

**B.      ESTABLISHMENT OF DEADLINE FOR FINAL FEE APPLICATIONS AND SCHEDULING A HEARING THEREON.**

31.      The Debtors request that the Court establish a deadline for Professionals to file their Final Fee Applications.  Doing so will allow the Debtors' estates to determine, in a timely and efficient manner, the final amount owed to Professionals for fees and expenses related to these Chapter 11 Cases.

32.      The Debtors further request that the Court schedule a hearing to consider approval of the Final Fee Applications.

**NOTICE**

33.      Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Committee; (c) counsel to the DIP Lenders; and (d) any party that has requested notice under Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice of this Motion is required.

---

[7] The Debtors will continue to explore any potential alternative resolutions and transactions that could avoid conversion prior to the hearing date on the Motion

4914-5567-7505, v. 1

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order,

substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested in this Motion,

and grant such other and further relief as the Court may deem just and proper.

Dated: August 15, 2025
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Alan M. Root*
William E. Chipman, Jr. (No.3818)
Alan M. Root (No. 5427)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
chipman@chipmanbrown.com
root@chipmanbrown.com
maser@chipmanbrown.com

*Counsel to the Debtors and Debtors in Possession*

4914-5567-7505, v. 1